UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GWENDOLYN COLE-HOOVER, M.D.,               **DECISION AND ORDER
ON RECONSIDERATION**

                           Plaintiff,          **02-CV-00826(M)**

v.

STATE OF NEW YORK DEPARTMENT OF
CORRECTIONAL SERVICES, et al.,

                           Defendants.
_____

In accordance with 28 U.S.C. §636(c), the parties have consented to jurisdiction by a United States Magistrate Judge [20].[1] By Decision and Order dated September 25, 2009 [189], I denied plaintiff's motion for summary judgment [173] and granted in part defendants' motion for summary judgment [154], leaving only plaintiff's claims under Title VII (for hostile work environment) and the New York Human Rights Law (for aiding and abetting) remaining for trial.[2]

However, considering the parties' disagreement at the final pretrial conference as to the scope of the trial, it became apparent to me that I should at least reconsider (if not modify) my summary judgment decision. See Virgin Atlantic Airways, Ltd. v. National Mediation Board, 956 F. 2d 1245, 1255 (2d Cir.1992), cert. denied, 506 U.S. 816, 820 (1992) ("The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own

---

[1]     Bracketed references are to the CM/ECF entries.

[2]     The background of this case is fully set forth in my initial decision, and will not be repeated herein.

decisions prior to final judgment"); Cusamano v. Sobek, 604 F. Supp. 2d 416, 435 (N.D.N.Y. 2009) ("The Court possesses the inherent authority to *sua sponte* reconsider its own orders before they become final"). Reconsideration is appropriate where there are "controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court". Shrader v. CSX Transportation, Inc., 70 F. 3d 255, 257 (2d Cir. 1995).

Therefore, by Text Order dated October 30, 2009 [200] I permitted the parties to make written submissions addressing my concerns [201-203], and further oral argument was held on November 25, 2009 [204]. For the following reasons, I reconsider and amend my prior decision.

## ANALYSIS

**A.      Plaintiff's First Cause of Action: Title VII Hostile Work Environment**

I find no basis for reconsidering my initial decision denying the parties' cross-motions for summary judgment on this claim.

**B.      Plaintiff's First Cause of Action: Title VII Discriminatory Suspension**

I previously concluded that plaintiff had met her *prima facie* burden of establishing discrimination and that the defendants offered a non-discriminatory reason for her suspension, but found that plaintiff had failed to raise a triable issue of fact as to whether her suspension was a pretext for discrimination, reasoning that she offered "no evidence that the individual defendants, including those allegedly responsible for her hostile work environment,

had any involvement in her suspension. Dr. Wright and Peter Brown, the Director of the Bureau of Labor Relations - neither of whom are parties - were directly responsible for plaintiff's suspension." Decision and Order [189], p. 28.

Although my original decision had focused on the lack of any discriminatory animus by the decisionmakers responsible for plaintiff's suspension, I overlooked the possibility that those defendants allegedly responsible for the hostile work environment could indirectly have tainted the decisionmakers, giving rise to what is referred to as "cat's paw" liability.[3] While "stray comments are not evidence of discrimination if they are not temporally linked to an adverse employment action or if they are made by individuals without decision-making authority", Miller v. Time-Warner Communications, Inc., 1999 WL 440781, *3 (S.D.N.Y. 1999), "there is considerable authority . . . from this circuit and others, that the element of causation - *i.e.*, that an adverse employment action was caused by discrimination - can be satisfied by showing that a person with discriminatory animus toward the plaintiff influenced the 'actual' decisionmaker, even if the latter did not consciously discriminate against the plaintiff". Sadki v. Suny College at Brockport, 310 F. Supp. 2d 506, 513 (W.D.N.Y. 2004) (Larimer, J.). *See also* Rose v. N.Y. City Board of Education, 257 F. 3d 156, 162 (2d Cir. 2001) (discriminatory comments of plaintiff's supervisor, who did not have formal firing authority but who "had enormous influence in the decisionmaking process," constituted direct evidence of discrimination); Downes v. Potter, 2006 WL 2092479, *10 (E.D.N.Y. 2006) ("Even assuming *arguendo* Barnes concurred in that decision without any racial motivation, plaintiff could still

---

[3] "In a cat's paw situation, the harasser clearly causes the tangible employment action regardless of which individual actually signs the employee's walking papers." Llampallas v. Mini-Circuit Lab, Inc., 163 F. 3d 1236, 1249 (11th Cir. 1998), cert. denied, 528 U.S. 930 (1999).

establish a discrimination claim if he can show that Chieffo was motivated by racial factors in recommending termination"); Rosa v. The Jewish Home of Central New York, 2006 WL 2714332, *8 (N.D.N.Y. 2006) ("defendant has not ruled out the possibility that a fact-finder could conclude that Dixon's alleged bias should be imputed to defendant on the ground that her report played a substantial role in the decision to terminate plaintiff"); Dickinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 431 F. Supp. 2d 247, 259 (D.Conn. 2006) ("Although Attorney Kelly, rather than Klug, made the final recommendation to fire Dickinson, Kelly's conclusions that Dickinson was being untruthful and had failed adequately to service a client's account relied heavily upon Klug's statements to Kelly . . . . Klug was acting as an agent of Merrill Lynch in conducting the investigation, just as Kelly was . . . . Thus, even if Kelly were found to have conducted her part of the investigation in good faith, the reasons that Merrill Lynch proffers for the termination may have been reasons that Klug originally created as a pretext for a different motivation"). [4]

Plaintiff's amended complaint alleges that defendants Angie Maume, Sue Wojcinski, and Donna Baker falsely accused her of destroying a patient's progress note ([40], ¶ 43) and that defendants Sandra Durfee, Maume, Wojcinski, and Baker (the "hostile work

---

[4] The Supreme Court "has never resolved-the circumstances in which an employer may be held liable based on the discriminatory intent of subordinate employees who influence but do not make the ultimate employment decision. There is a large body of court of appeals case law on this issue, and these cases disagree about the proper standard." Ricci v. DeStefano, __ U.S. __, 129 S.Ct. 2658, 2688 (2009). However, this may change as the Supreme Court recently invited the Solicitor General to file a brief expressing the views of the United States on a petition for certiorari addressing this issue. See Staub v. Proctor Hospital, 560 F. 3d 647 (7th Cir. 2009), cert. granted, 2010 WL 1525785 (2010).

defendants") made false accusations to defendant John Howard, M.D. concerning her care for patients.  Id., ¶46.

Defendant Howard's investigation into plaintiff's conduct was prompted by plaintiff's own conduct in refusing to perform a preoperative physical examination on August 3, 2001.  Although Dr. Howard ultimately concluded that this conduct standing alone did not warrant an admonishment or reprimand (Howard Deposition [144], p. 114), during his investigation defendant Maume informed him that plaintiff had been backdating her review notes and provided him with a stack of documents she had been collecting to support her claim. Howard Deposition [144], pp. 128-131.  Defendant Baker also reported the missing patient progress note from the August 3, 2001 incident and confirmed plaintiff's backdating of entries. Longo Declaration [156], Ex. 60, pp. 3-4.  It is also clear from Arbitrator Day's decision that defendants Durfee and Maume were interviewed as part of the Dr. Stern's investigation.  Longo Declaration [156], Ex. B(1), p. 9.  Defendant Wojcinski testified that she spoke with Dr. Stern "about some of the problems the staff was having with Dr. Cole-Hoover in terms of her relationship, her verbal mechanisms, her yelling at staff members." Wojcinski Deposition [152], p. 111.

Thus, it is evident that the hostile work defendants had at least some involvement in the events that precipitated plaintiff's suspension. Giving plaintiff the benefit of every favorable inference - as I must on defendants' motion for summary judgment - I conclude that there is a triable issue of fact as to whether the hostile work defendants involved Dr. Wright and Peter Brown, the decisionmakers, in furthering their discriminatory motives.  Although the evidence establishing that the hostile work defendants played a substantial role in plaintiff's

suspension appears thin, "summary judgment is improper when the court merely believes that the opposing party is unlikely to prevail on the merits after trial". <u>American International Group, Inc. v. London American Intern. Corp. Ltd.</u>, 664 F. 2d 348, 351 (2d Cir. 1981). Therefore, defendants' motion is denied to the extent that it seeks to dismiss plaintiff's Title VII discriminatory suspension claim against DOCS.

C.   **Plaintiff's Second Cause of Action: Aiding and Abetting**

"As an initial matter, the standard for all Title VII, section 1981, HRL . . . employment discrimination claims is the same." <u>Pilgrim v. McGraw-Hill Companies, Inc.</u>, 599 F. Supp. 2d 462, 468 (S.D.N.Y.2009). For the same reasons that I have denied the parties' cross-motions for summary judgment on plaintiff's Title VII claims, I likewise deny their cross-motions for summary judgment as to plaintiff's HRL §296 claim.

D.   **Plantiff's Third Cause of Action: 42 U.S.C. §1981**

Although plaintiff's Section 1981 and 1983 claims are asserted against all of the defendants (with the exception of plaintiff's fifth cause of action, which is not asserted against defendant Kirkpatrick), plaintiff only asks that I "reinstate the 42 U.S.C. §1981 and §1983 actions against Defendants Maume, Baker, Wojcinski, and Durfee". Plaintiff's Supplemental Brief [202], p. 4.

As discussed above, there remains a triable issue of fact as to whether the hostile work defendants tainted the decision by Dr. Wright and Peter Brown, the decisionmakers, to suspend plaintiff. Therefore, defendants' motion for summary judgment is denied to the extent it

seeks dismissal of plaintiff's Section 1981 claims against the hostile work defendants.[5] *See* Kendrick v. Penske Transportation Services, Inc., 220 F. 3d 1220, 1231 (10th Cir.2000) (applying cat's paw liability to §1981 discrimination claim).

E.      **Plaintiff's Fourth and Fifth Causes of Action:  42 U.S.C. §1983**

      1.      **Denial of a Property Interest Without Due Process (Fourth Claim)**

As discussed above, plaintiff only asks that I reinstate her Section 1983 claim as against the hostile work defendants. *See* Plaintiff's Supplemental Brief [202], p. 4. Since there remains a triable issue of fact as to whether the hostile work defendants tainted the decision by Dr. Wright and Peter Brown, the decisionmakers, to suspend plaintiff, I find that summary judgment on this claim as to the hostile work defendants is improper. *See* Logan v. Indiana Department of Corrections, 2005 WL 3003077, *11 (S.D.Ind. 2005) ("The 'cat's paw' doctrine (where the named decision makers were substantially directed or influenced by others who acted with retaliatory or discriminatory motives, thus undermining the independence of the official actors) in establishing §1983 liability has not occurred as frequently as in Title VII discrimination cases. Nonetheless, there have been decisions discussing and approving its application under §1983").

---

      [5]      Although not raised by defendants, it is questionable whether plaintiff's Section 1981 claim is viable in its current form. "Plaintiff cannot assert a claim under 42 U.S.C. §1981 because 42 U.S.C. §1983 provides the exclusive federal damages remedy for the violation of the rights guaranteed by §1981 when the claim is pressed against a state actor. . . . Defendants here are state actors. Therefore, Plaintiff's claims cannot be raised under 42 U.S.C. §1981." Hughes v. Butt, 2009 WL 3122952, *11 (N.D.N.Y. 2009) (citing Jett v. Dallas Independent School District, 491 U.S. 701, 735 (1989)). "Courts have interpreted this prohibition to extend to actions against individual defendants in their individual capacities." Rehman v. State University of New York at Stony Brook, 596 F. Supp. 2d 643, 654 (E.D.N.Y. 2009).

### 2. Denial of a Liberty Interest Without Due Process (Fifth Claim)

Since my earlier decision to dismiss this claim was based upon the fact that the process that led to plaintiff's suspension and ultimate reinstatement was constitutionally sufficient, it is unaffected by my new findings. Therefore, I find no reason to reconsider this aspect of my decision.

### F. Plaintiff's Sixth Cause of Action: Conspiracy to Deprive Plaintiff of Her Rights

My earlier decision to dismiss this claim, made as a matter of law based on the intracorporate conspiracy doctrine, is unaffected by my new findings. In fact, plaintiff does not ask that I reconsider this aspect of my decision.

## CONCLUSION

For these reasons, I order that defendants' motion for summary judgment [154] be granted in part and denied in part as set forth herein, and that plaintiff's cross-motion for summary judgment [173] be denied. A further conference with counsel to prepare for trial will be held on July 14, 2010 at 10:00 a.m. At that time, counsel should be prepared to discuss the scope of the issues for trial and the trial schedule, including its expected duration.

In estimating the time necessary to present their cases, the parties should take into "account the competing demands on the Court's calendar and the need to reduce the burden on the members of the jury who will decide the case", as well as my inherent authority to limit the time each side has to present its evidence. Service Employees International Union v. Roselli,

2010 WL 963707, *1 (N.D.Cal. 2010); Hardy v. Town of Greenwich, 629 F. Supp. 2d 192, 202 (D.Conn. 2009).

**SO ORDERED.**

DATED:	June 17, 2010

                                        /s/ Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge