UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GWENDOLYN COLE-HOOVER, M.D.                    **DECISION AND ORDER**

                Plaintiff,                                     02-CV-00826(M)

v.

STATE OF NEW YORK DEPARTMENT OF
CORRECTIONAL SERVICES, et al.,

                Defendants.

_____

In accordance with 28 U.S.C. §636(c), the parties have consented to jurisdiction by a United States Magistrate Judge [20].[1] Before me are defendants' motions *in limine* to preclude evidence of the arbitration [210], to preclude hearsay statements [215], to instruct the jury as to the substantive law prior to trial [221] and to permit witness John Howard, M.D. to testify via video conference [223], as well as defendants' motion to bifurcate [250]. Oral argument was held on June 29, 2011. At that time, defendants' other motions *in limine* were addressed. June 29, 2011 Text Order [254]. For the following reasons, defendants' motions to preclude evidence of the arbitration [210] and to preclude hearsay statements [215] are granted in part and denied in part as set forth herein, and motions to instruct the jury as to the substantive law prior to trial [221], to permit Dr. Howard to testify via video conference [223], and to bifurcate [250] are denied.

---

[1]    Bracketed citations refer to the CM/ECF docket entries.

## BACKGROUND

The factual background of this case is set forth in my prior summary judgment decision [189].

## ANALYSIS

**A.     Defendants' Motion to Preclude Evidence Concerning Plaintiff's Arbitration**

Relying on Arlio v. Lively, 474 F.3d 46, 52 (2d Cir. 2007), defendants "move to preclude plaintiff from introducing the arbitrator's Opinion and Award, and any evidence pertaining thereto, at trial." Defendants' Memorandum of Law [211], p. 1. Alternatively, defendants argue that plaintiff should be compelled to make an offer of proof prior to introducing such evidence. Id., p.4.

Pursuant to Fed. R. Evid. 402 "[e]vidence that is not relevant is not admissible." Arlio, 474 F.3d at 52. "'If an item of evidence tends to prove a fact that is of consequence to the determination of the action, it is relevant. If it does not tend to prove a material fact, it is irrelevant.'" Id. (*quoting* 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence §401.04[2][a], at 401-19 (2d ed. 2006)). "'A material fact is one that would affect the outcome of the suit under the governing law.'" Id.

In Arlio the plaintiff alleged that he was unconstitutionally suspended because of his political opinions. 474 F.3d at 50. "[T]he district court agreed with [the defendant] at the *in limine* hearing that the Arbitration Board's decision [finding that the plaintiff's suspension was not for cause] was irrelevant, since it was based solely on the particulars of the union collective bargaining agreement. It was not in any way an adjudication of Arlio's constitutional claims (nor

could it be)". Id. at 52. "However, [the plaintiff] ultimately convinced the district court that testimony about the arbitration was necessary to explain why he was not seeking back wages in the present federal suit." Id. at 52.

In reversing the district court, the Second Circuit concluded that "the district court admitted evidence about the arbitration solely because it was probative of a non-material issue; why [the plaintiff] was not seeking back wages in the federal action. Thus, the testimony was not relevant and should have been excluded." Id. at 53. "Although the district court gave a limiting instruction indicating that the testimony should be considered only for the limited purpose of 'what is and what isn't claimed for damages by the plaintiff,' that same end could have been achieved simply by allowing [the plaintiff] to state that he was not suing for back pay. Instead, the district court permitted [the plaintiff] to testify at length about the arbitration proceeding and essentially informed the jury that [the plaintiff's] suspension was not for just cause." Id.

In opposition to defendants' motion *in limine*, plaintiff argues that "the Arbitrator's award in this matter is probative of material issues raised by the Plaintiff during the pendency of the matter in this court, as well as, with the Arbitrator. Plaintiff has alleged during both proceedings that she was subjected to a hostile work environment and based on the discriminatory motives of the hostile work environment Defendants she was subjected to adverse employment actions." Pendergrass Declaration [232], ¶6. Relying on similar arguments, plaintiff argued at the summary judgment stage that the arbitrator's decision was entitled to preclusive effect. I rejected this argument, concluding that "[t]he sole issue before arbitrator Day and litigated by the parties was whether plaintiff's suspension was supported by just cause as required by the terms of her employment, not whether a Title VII violation occurred. There is no

indication that arbitrator Day found that the hostile work environment and disparate treatment experienced by plaintiff to be racially motivated, or that he intended to use these terms to denote Title VII violations." September 25, 2009 Decision and Order [189], p. 13.

In opposition to defendants' motion *in limine*, plaintiff also argues that the arbitration is relevant to issues at trial because she "was made to utilize her own financial resources to defend against charges that were the product of the discriminatory motives of the hostile environment Defendants; consequently, the arbitration itself is an element of Plaintiff's damages." Pendergrass Declaration [232], ¶5. However, as in Arlio, 474 F.3d at 53, this can be achieved by simply allowing plaintiff to state the costs she allegedly incurred in pursing the arbitration.

Plaintiff further argues that Fed. R. Evid. 803(8)(C) "provide[s] for the use and admission into evidence of a prior administrative finding at trial of an employment discrimination claim." Pendergrass Declaration [232], ¶7. "Prior administrative findings made *with respect to an employment discrimination claim* may, of course, be admitted as evidence at a federal-sector trial de novo." Chandler v. Roudebush, 425 U.S. 840, 864 n.39 (1976) (*citing* Fed. R. Evid. 803(8)(C)) (emphasis added). However, here, plaintiff did not arbitrate an employment discrimination claim. The sole issue was whether there was sufficient cause for plaintiff's suspension under her collective bargaining agreement.

Moreover, plaintiff relies (Pendergrass declaration [232], ¶7) on that aspect of my September 25, 2009 Decision and Order, in which I held that "'[t]he federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the

grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII. The federal court should consider the employee's claim de novo. The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate.'" [189], p. 14 (*quoting* Alexander v. Gardner-Denver Co., 415 U.S. 36, 59-60 (1974)).  However, unlike here, Alexander addressed the preclusive effect of an arbitration under the nondiscrimination clause of the collective-bargaining agreement.  415 U.S. at 43, 55.  No such nondiscrimination clause was at issue in plaintiff's arbitration.

Nevertheless, I recognize that it is necessary to provide the jury with a complete picture of what transpired during the relevant time period.  Therefore, with limiting instructions, I will permit plaintiff to introduce the fact 1) that an arbitration occurred concerning whether plaintiff's suspension was supported by cause as required by the terms of her employment, 2) that plaintiff prevailed at the arbitration and was re-instated, and 3) the costs plaintiff incurred in pursuing the arbitration.  Subject to plaintiff making an offer of proof prior to the trial, at this stage, all other aspects of the arbitration are precluded as irrelevant and prejudicial.  Therefore, defendants' motion is granted in part and denied in part as set forth herein.

**B.     Defendants' Motion to Preclude Hearsay Statements and For Cautionary Instructions Concerning Out-of-Court Statements**

Defendants argue that plaintiff's testimony that a person told her that defendants made racially offensive statements about her would be admissible for the limited purpose of establishing that she was aware of such comments "only if plaintiff introduces competent evidence tending to prove that the comments were actually made" from the individuals that heard

defendants' statements.  Defendants' Memorandum of Law [216], pp. 1-2.  Therefore, they request that plaintiff be precluded "from testifying about comments made outside her presence *prior* to introducing evidence that the comments were actually made".  Id., p. 3 (emphasis added). In response, plaintiff relies upon my September 25, 2009 Decision and Order ([189], pp. 16-18), wherein I rejected defendants' hearsay arguments.  Pendergrass Declaration [237], ¶4.

Plaintiff's reliance on my prior ruling is misplaced, since at the summary judgment stage plaintiff presented evidence *both* that Genevieve Mahoney heard defendant Maume state a racial epithet about plaintiff in her presence *and* that Ms. Mahoney relayed this information to plaintiff.  September 25, 2009 Decision and Order [189], p. 17.  Nevertheless, I conclude that plaintiff may testify that a person told her that defendants made racially offensive comments outside of her presence, for the limited purpose of establishing that plaintiff was aware of such comments, without having to first present evidence that defendants made these statements.  *See* Urban v. Capital Fitness, 2010 WL 4878987, *5 (E.D.N.Y. 2010)("second-hand comments, describing events or statements that occurred outside of the plaintiff's presence, may be relevant in evaluating whether a hostile work environment exists, but if such statements are offered for the truth of the matter asserted, they must be supported on a motion for summary judgment by an affidavit or other sworn statement from a person with first hand knowledge").

Any prejudice to the defendants can be mitigated by a proper limiting instruction to the jury that such testimony by plaintiff does not constitute evidence that the statements were actually made.  "Juries may not be familiar with the hearsay rule, but the law assumes that they can and do follow the limiting instructions issued to them." United States v. Linwood, 142 F.3d 418, 426 (7th Cir.), cert. denied, 525 U.S. 897 (1998).

Although I will not dictate to plaintiff when she must present evidence that racially offensive comments were made through witnesses with first-hand knowledge, this evidence must be introduced. Should plaintiff fail to present non-hearsay evidence establishing that these statements were made by defendants, her testimony that she heard of these statements being made will be stricken.

**C.      Defendants' Motion to Instruct the Jury as to the Substantive Law Prior to Trial**

Defendants argue that the pretrial instruction on the substantive law is necessary because it is unlikely that the jury will have accurate knowledge or information regarding the relevant law and that "instructions at the end of the testimony may come too late to help the jury understand the evidence or to overcome preconceived and erroneous notions about the significance of the evidence." Defendants' Memorandum of Law [222], pp. 2-3. Plaintiff opposes the motion, arguing that defendants have failed to provide any "substantive rationale" for their request and that it would "do no more than to increase the length of the trial". Pendergrass Declaration [238], ¶4.

Based upon defendants' current motion, which contains no case law in support, I conclude that they have failed to establish pretrial jury instruction on the substantive law is necessary. In every case there exists the possibility that the jury will not have an accurate understanding of the relevant law until they are so instructed at the close of the evidence. Therefore, defendants' motion is denied, without prejudice to renewal.

**D.      Defendants' Motion to Bifurcate**

Defendants make two primary arguments in support of bifurcation. First, it will increase efficiency because evidence concerning plaintiff's damages (including, the arbitration, article 75 and the Governor's Office of Employee Relations ("GOER") proceedings) will be unnecessary unless liability is found. Second, in order to contest her claims of emotional damages, defendants will have to introduce evidence of superseding and intervening causes for plaintiff's emotional damages, including plaintiff's subsequent and unrelated claims of emotional damages arising from her similar employment suit against the Veteran's Administration (10 cv-669) (W.D.N.Y.) and her suit against US Airways (6-cv-255) (W.D.N.C.), which will be prejudicial to one party or the other. Defendants' Memorandum of Law [251], pp. 6-9.

In response, plaintiff argues that defendants "complain of nothing more than issues that would ordinarily and by necessity be overlapping in a discrimination trial of this nature, i.e., the issue of economic loss due to the Defendants' discriminatory behavior, the loss of reputation that accommodates such discrimination, and the emotional distress Plaintiff endured or suffered as a consequence of said discrimination". Pendergrass Declaration [255], ¶5. She also argues that defendants' "concerns about intervening and or superseding periods of distress is without moment here, especially where they point to their own continuing discrimination as a cause of the emotional distress; this is true as well where they do nothing more than to raise the prospect of litigating other collateral matters to mitigate their damages". Id., ¶6.

Bifurcation is governed by Fed. R. Civ. P. ("Rule") 42(b), which permits separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize". "[W]hether to bifurcate a trial into liability and damages phases is a matter within the sound discretion of the

trial court". Getty Petroleum Corp. v. Island Transportation Corp., 862 F.2d 10, 15 (2d Cir. 1988), cert. denied, 490 U.S. 1006 (1989). "'Although bifurcation of trials is not unusual and may, under appropriate circumstances, be the preferred method, bifurcation remains the exception rather than the rule.'" Coyle v. Crown Enterprises, Inc., 2009 WL 2399904, *1 (W.D.N.Y. 2009)(Foschio, M.J.). "'The party seeking bifurcation bears the burden of establishing that bifurcation is warranted'". Id.

Although trying the liability and damages phases together may result in a longer trial involving testimony and evidence unrelated to the liability issues in this case, I agree with plaitniff that "bifurcation would do nothing more than prolong a case that has been awaiting resolution for more than nine . . . years". Pendergrass Declaration [255], ¶9. Moreover, at oral argument, plaintiff's counsel agreed to cap plaintiff's damages claim to a date certain, which he tentatively identified as the date plaintiff was reinstated following the GOER decision, thereby minimizing the scope of the trial. June 29, 2011 Text Order [254].[2]

Defendants' "concern that the presentation of substantial evidence regarding Plaintiffs' injuries could somehow prejudice and confuse the jury can be obviated through a curative jury instruction. Bifurcation is thus unnecessary to avoid any undue prejudice to the parties". Coyle, 2009 WL 2399904, *1.

---

[2] Notwithstanding that assurance, plaintiff's counsel has yet to advise defendant's counsel and the court of that date. Should he fail to do so in writing by August 8, 2011, defendants' motion to bifurcate may be reconsidered.

**E.     Defendants' Motion to Permit Dr. Howard to Testify Via Video Conference**

Relying on Rule 43(a), defendants seek to permit Dr. Howard, to testify via video conference because of his health conditions (osteopenia and cardiopulmonary issues), which would make it "onerous" for him to travel from his home approximately 2 1/2 hours away. Defendants' Memorandum of Law [225], pp. 1-2; Howard Declaration [224]. In response, plaintiff argues that defendants have produced "no competent medical evidence to demonstrate any physical limitations regarding his ability to travel and give testimony". Pendergrass Declaration [239], ¶7.

At oral argument, I directed defendants to submit medical evidence in support of their motion to permit Dr. Howard to testify via video conference by July 31, 2011. June 29, 2011 Text Order [254]. Because I failed to receive any medical evidence by the July 31 deadline, defendants' motion is denied.

**CONCLUSION**

For these reasons, defendants' motions to preclude evidence of the arbitration [210] and to preclude hearsay statements [215] are granted in part and denied in part as set forth herein, and motions to instruct the jury as to the substantive law prior to trial [221], to permit Dr. Howard to testify via video conference [223], and to bifurcate [250] are denied.

**SO ORDERED.**

Dated: August 3, 2011

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge