UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GWENDOLYN COLE-HOOVER, M.D.,                    **DECISION AND ORDER**

                    Plaintiff,                    **02-CV-00826(M)**

v.

STATE OF NEW YORK DEPARTMENT OF
CORRECTIONAL SERVICES, et al.,

                    Defendants.
_____

Pursuant to 28 U.S.C. §636(c)(1), the parties have consented to conduct all proceedings before a Magistrate Judge [20].[1] Defendants now move to compel plaintiff to execute their draft of a written agreement purportedly reflecting the terms of a settlement agreed to on the record on November 5, 2012 or, in the alternative, to vacate the settlement and reschedule this case for trial [384]. Plaintiff opposes that motion, and cross-moves to compel defendants to execute her version of a settlement agreement [388]. Oral argument was held on August 27, 2013 [389].

Since neither version of the settlement agreement accurately reflects the material terms of the settlement which was placed on the record, both motions are denied.

**BACKGROUND**

The jury trial of this action was scheduled to commence on Wednesday, November 7, 2012 [334]. By that time, the action had been pending for ten years, the trial had

---

    [1]    Bracketed references are to CM/ECF docket entries.

been repeatedly adjourned, and the parties were aware that I had set aside an entire month for the trial [300].

The parties were also aware that no further adjournments of the trial would be granted. On October 15, 2012, plaintiff moved to adjourn the trial date for 60 days because she had recently changed counsel [315]. Defendants opposed that motion, arguing that "they are all involved in this case against the their will, and it is simply unfair to expect them to repeatedly prepare and make plans, only to have the trial fall apart at the last minute. Their lives have been disrupted enough by this case. It is time to try the case and bring it to an end." Longo Declaration [316], ¶¶46-47. In denying plaintiff's motion, I agreed with defendants, stating that "continuances can be highly disruptive to the courts and the parties" (Decision and Order [319], p. 4), and that "a trial date once set must be adhered to unless there are compelling reasons for granting a continuance". Id.

On the morning of Monday, November 5, 2012 - two days before the trial was scheduled to commence - counsel telephoned my chambers to report that they had reached a settlement. That afternoon, the material terms of that settlement were placed on the record ([384-1], pp. 17-21 of 72). At that time, defendants' attorney Darren Longo stated: "I have offered and the plaintiff has accepted $750,000 total inclusive of damages, costs and fees to settle this case and also to settle [three other cases involving plaintiff]. I have advised counsel that because of the new Medicare and Medicaid laws there are some documents that I am going to have to ask for because they determine how I must word the stipulation, but I anticipate that given plaintiff's likely situation it would not take long to obtain the paperwork and then I can draft the stipulation and have it signed and submitted to the court" (id., p. 17 of 72).

I asked whether "the dismissal of the claims would be with prejudice in return for the payment of the settlement amount", and counsel both agreed (id.). I then asked counsel "to confirm that these are the material terms of the settlement, and that although documentation needs to be executed to confirm the settlement, the settlement of these four actions will be effective as of today, notwithstanding any additional documentation which needs to be executed", and counsel again agreed (id., p. 18 of 72). My Text Order issued that same day [338] stated: "A settlement has been reached in this case, the material terms of which were placed on the record at today's proceeding. Therefore, the jury trial scheduled to commence on November 7, 2012 is cancelled. The parties shall file an executed stipulation of dismissal."

Having spent the better part of the past year attempting to finalize the language of the settlement documentation, the parties have reached an impasse. Defendants now ask me to compel plaintiff to execute their version of a settlement agreement ([384-1], pp. 23-31 of 72), and plaintiff asks me to compel defendants to execute her version ([388-1], pp. 1-4 of 4). There are several areas of dispute, each of which will be addressed.

## ANALYSIS

A.  **Nature of the Settlement Agreement**

Defendants argue that the November 5, 2012 settlement was "subject to the further exchange of information by the parties . . . and the execution of a stipulation of settlement". Longo Declaration [384-1], ¶4. I disagree. "The words 'subject to' usually indicate a condition to one party's duty of performance." Burgess Construction Co. v. M. Morrin & Son Co., 526 F.2d 108, 113 (10th Cir.1975), cert. denied, 429 U.S. 866 (1976). Although the

execution of a written agreement was contemplated by the parties, it was not a condition of the settlement. To the contrary, I stated, and the parties agreed, that "although documentation needs to be executed to confirm the settlement, the settlement of these four actions *will be effective as of today, notwithstanding* any additional documentation which needs to be executed". [384-1], p. 18 of 72 (emphasis added).

"A 'preliminary' oral [settlement] agreement, entered into in anticipation of a later writing memorializing its terms, is no less binding than a written agreement, so long as the parties have not expressly reserved the right not to be bound in the absence of a writing." Bastedo v. North Rose-Wolcott Central School District, 929 F.Supp.2d 223, 225 (W.D.N.Y. 2013) (Larimer, J.); Wilson v. General Mills, Inc., 2010 WL 9175391, *4 (W.D.N.Y. 2010) (McCarthy, M.J./Skretny, J.), aff'd, 2011 WL 2023002 (2d Cir. 2011) (Summary Order). *See also* Brackens v. Sedgwick Claims Management Services, Inc., 2008 WL 906121, *3 (D.Colo. 2008) ("The fact that [defense counsel] had agreed to prepare settlement documents for filing with the court . . . does not alter the binding nature of an oral contract when the parties have had a meeting of the minds. It was not part of the agreement that the terms the parties had agreed upon were 'subject to' preparation of a written document").

My October 15, 2012 Decision and Order [319] left no doubt as to my position on further adjournments of the trial. Therefore, the parties were well aware that, had they expressly conditioned the settlement upon the execution of a written agreement (which Mr. Longo stated would take "a week and a half to two weeks" ([384-1], p. 17 of 72)), I would not have adjourned the trial. Having obtained the cancellation of the trial by agreeing on the record that the settlement was effective as of November 5, 2012, the parties cannot now be allowed to change

course. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter . . . assume a contrary position." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). "[J]udicial estoppel protects the essential integrity of the judicial process . . . [and] prevents parties from playing fast and loose with the courts." Id. at 750.[2]

### B.    Physician's Letter or "Medicare Set-Aside"

Defendants now insist that plaintiff either provide a physician's letter stating that she will not require further treatment, or else agree to a "Medicare Set-Aside" ("MSA"), whereby a certain amount of the settlement proceeds would be set aside as security for future medical payments, in order to protect the parties against any potential liability to Medicare. Longo Declaration [384-1], ¶¶51 *et seq*. Neither of these conditions are required by law - as defendants admit, "litigants and their attorneys are left without official guidance as to how to avoid liability for failing to protect Medicare's interests. It is therefore up to the litigants and their attorneys to determine how best to protect themselves." Longo Declaration [384-1], ¶¶44-45.

Although defendants could have conditioned the settlement on plaintiff's providing a physician's letter or agreeing to a MSA,[3] they did not do so. *See* Bruton v. Carnival Corp., 2012 WL 1627729, **2, 3 (S.D.Fla. 2012) ("the [settlement] Agreement does not require

---

[2]    I do not mean to suggest that the parties intentionally deceived the court last November. I assume that they believed in good faith that a settlement agreement would be executed. Unfortunately, that has not occurred.

[3]    *See* Welch v. American Home Assurance Co., 2013 WL 704936, *1 (S.D.Miss. 2013) ("One of the terms and conditions of the parties' global settlement is that this Court determine a Medicare Set Aside").

the creation of a Medicare set-aside trust account. The Agreement specified only that Plaintiff was to execute a general release with 'Medicare provisions' without specifying what those provisions would be. The Agreement makes no mention whatsoever of a Medicare set-aside account . . . . There is no legal requirement that the settlement in this personal injury lawsuit include a Medicare set-aside trust account"); Sipler v. Trans Am Trucking, Inc., 881 F.Supp.2d 635, 638, 639 (D.N.J. 2012) ("no federal law requires set-aside arrangements in personal injury settlements for future medical expenses . . . . [T]he parties in this case need not include language in the settlement documents noting [plaintiff's] obligations to Medicare or fashion a Medicare set-aside for future medical expenses").

Mr. Longo argues that "[i]t is imperative that the stipulation of settlement contain language making it clear that plaintiff and defendants have taken all reasonable steps to protect Medicare's interests. This is why I stated on the record on November 5, 2012, that I needed information from plaintiff in order to determine how to word the stipulation of settlement in this case: without knowing plaintiff's Medicare status, I could not know whether, or to what degree, steps have to be taken to protect Medicare's interests". Longo Declaration [384-1], ¶¶39-40.

If defendants considered plaintiff's Medicare status to be critical in deciding whether to settle, they should have ascertained that status before agreeing that the settlement was effective as of November 5, 2012. "A party bears the risk of a mistake when . . . he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." De Sole v. Knoedler Gallery, LLC, ___ F. Supp.2d___, 2013 WL 5452669, *33 (S.D.N.Y. 2013) (*quoting* Restatement (Second) of Contracts, §154). "Even though the mistaken party did not agree to

bear the risk, he may have been aware when he made the contract that his knowledge with respect to the facts to which the mistake relates was limited. If he was not only so aware that his knowledge was limited but undertook to perform in the face of that awareness, he bears the risk of the mistake." Restatement (Second) of Contracts, §154, comment c.

### C.     Non-Admission of Liability

Defendants argue that "it is standard for a stipulation of settlement to include a provision whereby the defendants do not concede liability or wrongdoing". Longo Declaration [384-1], ¶86. While that may be so, the inclusion of such a term was not discussed on November 5, 2012, and therefore cannot be ordered.

In any event, defendants' concerns that the settlement might be construed as an admission of liability are unfounded, since "[a] settlement neither requires nor implies any judicial endorsement of either party's claims or theories". Bates v. Long Island Railroad Co., 997 F.2d 1028, 1038 (2d Cir.), cert. denied, 510 U.S. 992 (1993). *See also* Perez v. Westchester County Dept. of Corrections, 587 F.3d 143, 148 (2d Cir. 2009) ("The settlement did not constitute an admission of liability").

### D.     Release/Dismissal With Prejudice

Defendants further argue that "it is standard for a stipulation of settlement to include . . . a provision whereby the plaintiff releases the defendants from liability. The proposed stipulation contains these provisions. Longo Declaration [384-1], ¶¶86-87. Defendants' proposed Stipulation of Settlement and Discontinuance releases the named defendants "and any

and all current or former employees of DOCCS . . . from any and all claims, liabilities and causes of action arising out of [plaintiff's] employment with DOCCS, including but not limited to claims relating to or arising out of any alleged violation of plaintiff's constitutional rights, and all other causes of action and claims of liability". [384-1], pp. 24-25 of 72, ¶3.

That language is in effect a general release. However, on November 5, 2012 I asked Mr. Longo "is there going to be any general release contemplated or that's not part of this?", and he responded "well, that is not what the concern is". Id., p. 20 of 72. Since a release (much less a general release) was not agreed to at that time, it cannot be ordered. What *was* agreed (and therefore can be ordered) is that "the dismissal of the claims would be with prejudice in return for the payment of the settlement amount". Id., p. 17 of 72. I explained to plaintiff that the phrase "with prejudice" means "that the case will be settled and the claims cannot then be reasserted", and she replied that "my attorney has already explained that". Id., p. 18 of 72.

While defendants' proposed settlement agreement does not accurately reflect what was agreed to, neither does plaintiff's [388-1]. In her version, plaintiff agrees to "voluntarily withdraw her claims in the following actions and will execute a stipulation of voluntary discontinuance . . . and agrees that she will not seek to re-open these cases for any reason". [388-1], ¶¶3-4. Agreeing not to re-open *these* four cases does not preclude the possibility (however slim) that plaintiff would seek to assert the same claims in *different* cases.

Therefore, the parties should rely upon the language to which they agreed on November 5, 2012, namely that in return for payment of the settlement amount, the four named cases will be dismissed "with prejudice" - meaning "in a way that finally disposes of a party's claim and bars any future action on that claim". Black's Law Dictionary (9th ed.).

E.  **Attorney's Fees**

Defendants argue that plaintiff must agree to hold them harmless against any claim for payment by her attorneys. Longo Declaration [384-1], ¶13. That was not discussed on November 5, 2012. What *was* discussed and agreed to is that defendants would not be liable for any claim for attorneys fees, which were to be resolved between plaintiff and her attorneys. Id., pp. 18-19 of 72.

During proceedings on November 28, 2012, the parties, along with plaintiffs' former attorneys, agreed that "$360,915.05 of the settlement proceeds will be held in escrow pending resolution of the attorneys' fee disputes and the balance of the settlement proceeds may be disbursed to plaintiff" [343]. By letter dated December 4, 2012 [345], plaintiff's attorney Prathima Reddy suggested that the escrowed amount should be held by the firm of Hodgson Russ, LLP (which plaintiff was hoping to retain to represent her in connection with the fee dispute) or, in the alternative, by her. Plaintiff's former attorneys requested that the escrowed amount be held by the clerk of this court [344, 346]. By Text Order dated December 6, 2012 [347], I directed that the escrowed funds be deposited in an interest-bearing account with the clerk of this court, based on the fact that Ms. Reddy "has indicated that she will not be representing plaintiff in connection with her former attorneys' claim for attorneys fees".

However, the Hodgson Russ firm has now appeared in this action to represent plaintiff in connection with the fee dispute [348-350], and during oral argument on August 27, 2013 [389], attorney Joseph S. Brown of that firm agreed that Hodgson Russ would be willing to hold the disputed funds in an interest-bearing escrow account. Since plaintiff "opposed the

-9-

motions of prior counsel to place any amounts of alleged attorneys' fees owed in an interest-bearing account with the Clerk of the Court" (Reddy Declaration [388], ¶11), and since I conclude that Hodgson Russ LLP would be an adequate repository for the escrowed funds, I am revising my earlier Text Order [347][4] to direct that defendants pay the disputed attorney's fees ($360,915.05) to Hodgson Russ, LLP (rather than the clerk of this court) to be held in an interest-bearing escrow account. Upon resolution of the fee dispute, I will instruct that firm as to how those funds should be paid.

To avoid any possible confusion, I wish to emphasize that at this time I have *not* determined whether plaintiff's former attorneys are entitled to compensation or, if so, how much.

**F.    The Next Step**

Defendants suggest that "if plaintiff is not directed to execute a stipulation with [defendants'] language included, then the settlement should be voided and the matter should proceed to trial". Longo Declaration [384-1], ¶104. My answer to that suggestion is no. If the parties wished to try the case, the time to do so was last November. Instead, they settled, and "the fact that the settlement was never reduced to writing is insufficient to render the settlement nonbinding". Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007). "In the litigation process, when certain moments have passed, district courts are not required to give parties a 'do over.'" Harleysville Lake States Ins. Co. v. Granite Ridge Builders, Inc., 2009 WL 4843558, *2 (N.D.Ind. 2009).

---

[4]    "[A] court may revise an interlocutory order at any time prior to the entry of final judgment". Gainer v. United Automobile, Aerospace, Agricultural Implement Workers (UAW) Region 9, 2013 WL 5437364, *7 (W.D.N.Y. 2013) (Skretny, J.).

The parties have made progress in agreeing on certain language (including Medicare-related language) that was not specifically discussed, and I encourage them to continue those efforts. However, this case is now nearing its 11th year. As defendants stated over a year ago, "[i]t is time to . . . bring it to an end". Longo Declaration [316], ¶47. Therefore, if the parties have not executed settlement documentation by November 8, 2013, I will entertain a motion to enforce the settlement. *See* Bastedo, 929 F.Supp.2d at 225 ("A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case pending before it"); Sipler, 881 F.Supp.2d at 637 ("the Court has the authority to enforce the settlement, with or without the provisions proposed by Defense counsel involving Medicare").

## CONCLUSION

For these reasons, the parties' motions [384, 388] seeking to compel execution of their respective settlement agreements are both denied.

**SO ORDERED.**

DATED: October 16, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge