UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GWENDOLYN COLE-HOOVER, M.D.,                    **DECISION AND ORDER**
                                                **ON MOTIONS FOR**
                                                **ATTORNEYS' FEES**

                              Plaintiff,         02-CV-00826(M)

v.

STATE OF NEW YORK DEPARTMENT OF
CORRECTIONAL SERVICES, et al.,

                              Defendants.
_____

        Pursuant to 28 U.S.C. §636(c)(1), the parties have consented to conduct all

proceedings before a Magistrate Judge [20].[1]  Before me are two motions by plaintiff's former

attorneys for an award of attorneys' fees: a motion by Brian Fitzgerald and Anna Marie

Richmond [341], and a motion by Anthony Pendergrass [353].  For the following reasons, the

first motion is granted in part and denied in part, and the second motion is reluctantly denied.


                              **BACKGROUND**

        Plaintiff commenced this employment discrimination action on November 21,

2002 [1].  At that time, she was represented by attorney Gregory Mattacola of Rome, New York.

In the Fall of 2005, plaintiff retained Brian Fitzgerald and Anna Marie Richmond to replace Mr.

Mattacola [104-2].  On October 27, 2005 they filed an Amended Complaint [40] seeking relief

under 42 U.S.C. §§1981, 1983, 1985 and 2000e, *et seq*. (Title VII), as well as the New York

State Human Rights Law (Executive Law §290 *et seq*.).

_____
        [1]        Bracketed references are to CM/ECF docket entries.

In January 2008 Mr. Fitzgerald and Ms. Richmond moved for leave to withdraw as plaintiff's attorneys, citing "fundamental differences of opinion between us and Dr. Cole Hoover concerning the best approach to litigating her case, which make it impossible for us to continue as her counsel".  Richmond Affirmation [104], ¶6.  After plaintiff failed to appear at an April 10, 2008 hearing on that motion (having previously been warned [117] that her failure to appear would cause me to grant the motion), on April 11, 2008 I granted their motion to withdraw as unopposed [119].

Mr. Pendergrass first appeared with plaintiff at a status conference on April 17, 2008 [120], and entered a formal appearance in this action on May 1, 2008 [122].  Thereafter, he performed numerous services on her behalf, including appearing with her at settlement conferences [134, 270], successfully opposing portions of defendants' motion for summary judgment [154, 189], filing a pretrial statement [198], obtaining reconsideration and modification of my summary judgment decision [205], and filing a Supplemental Complaint [284].

At a conference on July 9, 2012, I scheduled jury selection and trial to commence on November 1, 2012, and required final pretrial statements by August 31, 2012 [299, 300].  On August 21, 2012 plaintiff filed a *pro se* motion requesting "the Honorable Court to schedule a trial date within 30 days by October 1, 2012 or Court to Order Total Summary Judgment against the Defendants" [301].  By Text Order issued that same day, I denied plaintiff's motion, stating that "unless and until plaintiff's attorney is granted leave to withdraw or a stipulation is filed memorializing his withdrawal or termination, all filings should come through him" [302].

By letter dated September 24, 2012 [355-1], plaintiff terminated Mr. Pendergrass as her attorney, stating:

"Since July 9, 2012 I have had the most difficult time attempting to move forward and to allow you to represent me as my attorney. I feel very strongly that your conduct on that date made it impossible for me to confidently continue our attorney-client relationship, your failure to request documents I persistently requested of you. I believe that our differences are beyond reconciliation! I must regrettably inform you that after careful and painstaking consideration I must terminate your services as my Attorney. This termination is effective immediately. I have secured the services of Prathima Reddy, Esquire . . . . Please forward immediately to Ms. Reddy and all files pertaining to each of the cases that you have represented me as my attorney. I wish to extend my thanks and gratitude for the work you have done on my behalf. Please acknowledge my letter with a release. Thank you for your attention to this matter."

On November 5, 2012, shortly before jury selection, plaintiff (now represented by Ms. Reddy) placed on the record the settlement of this and three other actions for the sum of $750,000 [337, 338]. When the parties were unable to agree on the exact language of the settlement documentation, I directed that judgment be entered in favor of plaintiff in the amount of $750,000, and that of that amount the sum of $360,915.05 be placed in escrow, pending resolution of these motions [394]. Defendants have appealed from that judgment [401], and their appeal remains pending.[2]

---

[2]     The fact that final judgment has been entered and is currently the subject of an appeal does not affect this court's ability to decide the pending motions. *See* Chesley v. Union Carbide Corp., 927 F.2d 60, 65 (2d Cir.1991) ("a federal court's ancillary jurisdiction to resolve fee disputes extends to disputes that arise after the initial litigation is no longer before the court"); Noga v. Potenza, 2002 WL 34945085, *2 (N.D.N.Y. 2002) ("the pendency of Potenza's appeal does not deprive this Court of jurisdiction to decide Noga's motion for attorney's fees and costs").

**ANALYSIS**

**A.      Fitzgerald/ Richmond Motion [341]**

The Retainer Agreement between plaintiff, Mr. Fitzgerald and Ms. Richmond called for payment of a $10,000 retainer ([341-2], §I) plus a one-third of contingency fee, to be reduced by any attorney's fees awarded by the court (id., §II(A), (B)).  It further stated that "[i]n the event that during the litigation the client . . . causes to be terminated, without good cause, representation by the attorneys, she will pay the attorneys from any sum paid by the defendants . . . for hours spent in the litigation at the attorneys then usual rate for federal court litigation, currently $250 per hour . . . . In the event that no remedy is obtained by the client, the attorneys will receive no compensation other than the initial retainers described above" (id., §II(C), (D)).

Mr. Fitzgerald claims entitlement to compensation of $51,500.00 for 206 hours at $250.00 per hour, plus outstanding disbursements of $245.30, for a total of $51,745.30 ([341-4], pp. 7-14 of 25).[3] Ms. Richmond claims entitlement to compensation of $63,492.25 for 280.39 hours,[4] plus an outstanding disbursement of $2.50, for a total of $63,494.75 (id., pp. 15-25 of 25), against which she credits a $5,000 retainer received from plaintiff, for a balance of $58,494.75 (id., pp. 5 and 25 of 25).

---

[3]      His invoice's actual stated total is $52,420.30, which includes $675.00 for nine hours of work by Fitzgerald's law clerk (id., p. 13 of 25). However, since the Retainer Agreement entitles him to compensation only for attorney time, he may not be compensated for his law clerk's time.

[4]      This calculation appears to be mistaken. 280.39 hours at $250.00 per hour equals $70,097.50.

Although plaintiff does not challenge the agreed-upon $250 hourly rate, she accuses Mr. Fitzgerald and Ms. Richmond of "double-billing & over-staffing of depositions . . . duplicative attendance at conferences/ meetings . . . vagueness and time entries for clerical work . . . duplicative time charges within one attorney's billing . . . [and] unlikely time charges", and suggests that "an across-the-board 75%  reduction of the requested amount is warranted in this case".  Plaintiff's Memorandum of Law [356-1], pp. 3-6.

Ms. Richmond agrees that her time entry for September 27, 2007 should have stated 0.5 hours, not 14.5 hours, and that she has "no objection to deducting 14 hours at $250.00 per hour" from that invoice. Fitzgerald Further Reply Affidavit [361], ¶¶2-3. However, dismissing plaintiff's other objections to their invoices, she and Mr. Fitzgerald describe plaintiff as a "sophisticated client" who "knew full well that she was hiring two attorneys and, pursuant to the plain language of the Retainer Agreement knew that she would owe the obligation of paying for their services at the rate of $250.00 per hour if she caused their termination.  And, she also knew . . . that Fitzgerald and Richmond were working on the matter together, would attend depositions and court conferences together, and expend together the many hours which their invoices reflect".  Fitzgerald Reply Affidavit [364], ¶3.

I find nothing improper with the Retainer Agreement's provision for payment of hourly rates in the event of justifiable withdrawal from representation.  "Under New York law, where an attorney withdraws for cause, he or she is entitled to be compensated based on *quantum meruit*." Bonnaig v. Nunez, 2012 WL 6200977, *2 (S.D.N.Y. 2012), aff'd, 2013 WL 6284297 (2d Cir. 2013) (Summary Order).  "Under such circumstances, a fee agreement obligating the client to compensate the lawyer at reasonable hourly rates for the time already expended is little

more than a contract version of the normal remedy of recovery in *quantum meruit* when a lawyer is discharged." Four Winds, LLC v. Smith & DeBonis, LLC, 854 N.E.2d 70, 74 (Ind. App. 2006) (*quoting* 1 Hazard & Hodes, The Law of Lawyering §8.15, at 8–38 (3d ed. 2003)). *See also* 23 Williston on Contracts §62:10 (4th ed.) ("an attorney's fees agreement that provides for an hourly rate in the event of a precontingency termination is presumptively enforceable").

However, that factor does not relieve me of the obligation to ensure that the time charged was reasonably necessary for the prosecution of the case. "[A]ttorney's fee agreements have been held to different, and often higher, standards than ordinary contracts . . . . [C]ourts have traditional authority to supervise the charging of fees for legal services under their inherent and statutory power to regulate the practice of law." King v. Fox  418 F.3d 121, 133 (2d Cir. 2005). Therefore, "[f]ee arrangements between an attorney and client are scrutinized with particular care, and an attorney who has drafted a retainer agreement ordinarily has the burden of showing that the contract was fair, reasonable, and fully known and understood by the client." Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 67 (2d Cir. 2000).

I agree with plaintiff that some of the time entries are vague, and that some of the effort appears duplicative. For example, "where two attorneys appear at a deposition on behalf of a single set of clients, they have some burden to show that each had a distinct responsibility in the case necessitating his or her presence". Walker v. Coughlin, 909 F.Supp. 872, 880 (W.D.N.Y. 1995) (Larimer, J.). However, "[r]ather than disallow one attorney's hours completely for these depositions . . . it would be more appropriate simply to address the relative lack of a demonstrated need for two attorneys at the depositions through a reduction of the total time compensated." Id.

"In . . . cases with voluminous fee applications, courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application [citations omitted]. These courts have endorsed percentage cuts as a practical means of trimming fat from a fee application." New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983).  "[A] trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation." Id.

In determining an appropriate reduction, I am also influenced by the fact that whereas some retainer agreements call for payment of an hourly rate *irrespective of outcome* if the attorney withdraws for cause (*see* Four Winds, LLC and Williston on Contracts, supra), Mr. Fitzgerald and Ms. Richmond seek payment only if plaintiff herself is paid. *See* Retainer Agreement [341-2], §II(C) and(D). In determining whether a fee is excessive, the court should consider "the risk undertaken by the attorney".  Gordon v. Credno, 102 A.D.3d 584, 586 (1st Dept. 2013).

Considering all of these factors, I conclude that a 10% reduction in fees is warranted. *See* Klimbach v. Spherion Corp.  467 F.Supp.2d 323, 332 (W.D.N.Y. 2006) (Telesca, J.) ("a number of plaintiff's counsel's billing entries are vague . . . . Under these circumstances, it is impossible to determine whether those hours were duplicative or were justifiably billed . . . . an across-the-board 10% reduction for these specific entries is therefore justified"); Davis v. Eastman Kodak Co.  758 F.Supp.2d 190, 202 (W.D.N.Y. 2010) (Feldman, M.J.) ("based on my experience with the case and after review of the records submitted, I find that an across-the-board

reduction of ten percent would be appropriate to eliminate duplicative or unnecessary time");

Greenway v. Buffalo Hilton Hotel 951 F.Supp. 1039, 1069-70 (W.D.N.Y. 1997) (Foschio, M.J.),

aff'd in relevant part, 143 F.3d 47 (2d Cir. 1998) ("certain entries on both counsels' time records

do not always accurately identify what the nature or subject was of the work performed . . . .

Accordingly, the court hereby reduces the hours requested in counsels' fee request by 10%").

Accordingly, Mr. Fitzgerald's fee request of $51,500.00 will be reduced by 10%

to $46,350.00, plus disbursements of $245.30, for a total of $46,595.30. As previously stated,

Ms. Richmond seems to have already reduced her time, since the stated hours at $250 per hour

would total $70,097.50. From that figure I deduct $3,500.00 (for 14 erroneously reported hours at

$250 per hour - see Fitzgerald Further Reply Affidavit [361], ¶¶2-3), yielding $66,597.50.

Reducing that figure by 10% yields $59,937.75, plus a disbursements of $2.50, for a total of

$59,940.25. Deducting from that amount the $5,000.00 retainer already paid yields the figure to

which Ms. Richmond is entitled: $54,940.25.


**B.    Pendergrass Motion [353]**

An evidentiary hearing concerning Mr. Pendergrass' motion was held on April 15,

2013 [412].  His motion is based upon an April 17, 2008 "Attorney Retainer Agreement" [359-1]

which he claims plaintiff executed "in my presence at [the U.S. Courthouse] just before I

appeared in this matter on her behalf". [412], pp. 71-72.  Plaintiff "vehemently den[ies] that I

signed a retainer agreement with Pendergrass", and further argues that "because Pendergrass was

terminated for cause, he is not entitled to any compensation".  Plaintiff's Declaration [355], ¶¶1,

2.  Each contention will be addressed.

1.      **Did Plaintiff Execute a Retainer Agreement with Mr. Pendergrass?**

For several reasons, I find that plaintiff did execute the Attorney Retainer Agreement.  In the first place, plaintiff's testimony was inconsistent. When shown a copy of that Agreement, she stated that "when it's a legal document, I sign M.D." and noted that the signature on the Agreement did not contain that suffix. [412], pp. 10, 11.  However, when shown another legal document [366] bearing her signature *without* the suffix "M.D.", she retreated from that position: "I didn't say that every document I sign as M.D.". Id., p. 35.

Secondly, plaintiff admits that "[u]nder New York law, attorneys are required to provide a written letter of engagement or to execute a written retainer letter with a client.  See 22 N.Y.C.R.R. sec 1215; Rule 1.5(a) and (b) of N.Y. Rules of Professional Conduct".  Plaintiff's Supplemental Memorandum of Law [374], pp. 1-2.  I find it inconceivable that Mr. Pendergrass would have undertaken to represent plaintiff in this action without having her agree in writing to the terms of his engagement and compensation - particularly since he knew that plaintiff and her former attorneys had parted ways.

Third, if plaintiff did not sign the Attorney Retainer Agreement, I would have to conclude that Mr. Pendergrass was willing to jeopardize his entire legal career by forging her signature - and in my view, that possibility is beyond remote.  Therefore, notwithstanding plaintiff's sworn denial that she executed the Attorney Retainer Agreement [359-1], I find that she did.  *See* Diallo v. I.N.S., 232 F.3d 279, 287–88 (2d Cir.2000) (an adverse credibility determination can be "appropriately based upon . . . inherently improbable testimony").

**2.      Was Mr. Pendergrass Discharged "For Cause"?**

The Attorney Retainer Agreement states that it "shall be construed under and in accordance with the laws of the State of New York". [359-1], p. 4 of 5. "Under New York law, an attorney may be dismissed by a client at any time with or without cause . . . . If the discharge is for cause, the attorney is not entitled to fees." Garcia v. Teitler, 443 F.3d 202, 211 (2d Cir. 2006). "It is the client's burden to establish that the attorney was discharged for valid cause." Farb v. Baldwin Union Free School District, 2011 WL 4465051, *9 (E.D.N.Y. 2011).

"Although the New York courts have not explicitly defined 'cause,' the case law reflects that it means that the attorney has engaged in some kind of misconduct, has been unreasonably lax in pursuing the client's case, or has otherwise improperly handled the case." Garcia, 2004 WL 1636982, *5 (E.D.N.Y. 2004), aff'd, 443 F.3d 202 (2d Cir. 2006). "A client must show that his former attorney's conduct constituted a failure to properly represent his interests." Antonmarchi v. Consolidated Edison Co. of New York, 678 F.Supp.2d 235, 241 (S.D.N.Y. 2010).

Plaintiff offers several justifications for her termination of Mr. Pendergrass (*see* plaintiff's Declaration [355] and Supplemental Memorandum of Law [374]), most of which I find unpersuasive. In most respects Mr. Pendergrass performed admirably in this case, under challenging and difficult circumstances. For example, but for his efforts in resisting portions of defendants' motion for summary judgment, plaintiff would not have been able to settle the case.

Unfortunately, however, Mr. Pendergrass' candid acknowledgment of his failure to maintain contemporaneous time records[5] cannot be ignored. "Given the fact that Dr. Cole-Hoover sought to recover statutory attorneys' fees on her federal claims, it is simply mind-boggling that Pendergrass has no time records or any documents reconstructing his time. Such a serious oversight casts serious doubt on Pendergrass' . . . ability to competently carry out his professional duties. The Court should therefore rule that Dr. Cole-Hoover terminated Pendergrass for cause and that he is therefore not entitled to recover any attorneys' fees". Plaintiff's Supplemental Memorandum of Law [374], pp. 6-7.

Since this factor first came to light several months after his termination, the fact that it was not mentioned in the termination letter is not dispositive. "Misconduct that occurs before an attorney's discharge but is not discovered until after the discharge may serve as a basis for fee forfeiture". Farb, 2011 WL 4465051, *9; *see also* Brill & Meisel v. Brown, __A.D.3d__, 2014 WL 113998, *1 (1st Dept. 2014); Doviak v. Finkelstein & Partners, LLP, 90 A.D.3d 696, 699 (2d Dept. 2011).

The Attorney Retainer Agreement between plaintiff and Mr. Pendergrass provided for an initial $15,000 non-refundable retainer, plus "[o]ne-third (1/3) of any sum received by the Client, through an award or settlement between the parties to the litigation . . . . That one-third (1/3) sum will be reduced by any award of attorneys' fees ordered by the Court. The attorneys

---

[5] "I dare not attempt to recapitulate my efforts here for fear of being unhelpful or appearing to be fraudulent, noting . . . the absence of said [time] records . . . . While I cannot recapitulate the hours here, I am sure that given the litigious posture of this matter I spent more than a thousand hours on this matter . . . over the course of more than four years of litigation." Pendergrass February 25, 2013 Declaration [359], ¶¶39, 41.

will seek to recover any attorneys' fees available by statute, and if so awarded, will reduce the one-third contingency fee obligation".  [359-1], p. 2 of 5.

The long-established rule in this Circuit is that an application for court-awarded attorneys' fees on federal claims[6] *must* be based upon contemporaneous time records. "However unfair it would be to rule retroactively that plaintiffs' attorneys should have kept better records in the past, the difficulties raised by the lack of contemporaneous records in this case convince us of the need to announce for the future that contemporaneous time records are a *prerequisite* for attorney's fees in this Circuit . . . . All applications for attorney's fees, whether submitted by profit-making or non-profit lawyers,  for any work done after the date of this opinion *should normally be disallowed* unless accompanied by contemporaneous time records". Carey, 711 F.2d at 1147, 1154 (emphasis added).

That rule was meant to have teeth. *See* Ward v. Brown, 899 F.Supp. 123, 130 (W.D.N.Y. 1995) (Larimer, J.) ("The rule in this Circuit prohibits the submission of reconstructed records, where no records have been kept [citations omitted]. Because Cohen did not keep contemporaneous records . . . no fees will be awarded for the time claimed . . . . Although this result might seem harsh, it is consistent with the Court of Appeals' very clear and

---

[6]	Although plaintiff also asserted a pendent claim under the New York State Human Rights Law (Executive Law §290, *et seq*.), "the NYSHRL does not provide for an award of fees". Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir.1997); New York City Board of Education v. Sears, 83 A.D.2d 959, 960 (2d Dept. 1981).

strict requirement that *no* attorneys' fees can be collected if the application does not meet the standard set forth in Carey") (emphasis in original).[7]

Since Carey was decided nearly 30 years ago, it seems unlikely that Mr. Pendergrass was unaware of the requirement that he maintain contemporaneous time records in order to apply for court-awarded attorneys' fees, as he promised to do in the event that plaintiff prevailed on her claims.  However, whether or not he was actually aware of that requirement is irrelevant: "ignorance of the law will not excuse any person . . . . An attorney is presumed to know the law".  Scher v. National Association of Securities Dealers, Inc., 386 F. Supp.2d 402, 409 (S.D.N.Y. 2005), aff'd, 2007 WL 631687 (2d Cir. 2007) (Summary Order).

While it might be said that since plaintiff settled the case she was not harmed by Mr. Pendergrass' failure to maintain contemporaneous time records, the law is clear that "[a]n attorney may not recover fees for legal services performed in a negligent manner even where that negligence is not a proximate cause of the client's injury".  Kluczka v. Lecci, 63 A.D.3d 796, 798 (2d Dept. 2009); Martin, Van de Walle, Guarino & Donohue v. Yohay, 149 A.D.2d 477, 480 (2d Dept. 1989), app. denied, 79 N.Y.2d 753 (1992).

There is no unfairness in applying that rule in this case. If Mr. Pendergrass had not been discharged, his fee would have been contingent on the outcome of the case. Thus, if plaintiff did not prevail, he would have been entitled to nothing more, whereas if she did prevail, he would have been entitled to one-third of her recovery, to be offset by any fees awarded by the

---

[7]    The difficulties created by the absence of contemporaneous time records are exemplified by Mr. Pendergrass himself. For example, whereas at one point he stated under oath that he "spent more than a thousand hours on this matter . . . over the course of four years" (Pendergrass Declaration [359], ¶41), at the hearing on April 15, 2013 he testified that "Dr. Cole-Hoover and I probably met 20 hours a week over the course of four years" ([412], p. 101), which would total over four thousand hours.

court.  Since his failure to maintain contemporaneous time records would have prevented a fee

award, he could not in good conscience have retained a contingent fee in any event.

      Although Mr. Pendergrass undoubtedly rendered services of value to plaintiff, his

failure to maintain contemporaneous time records "constituted a failure to properly represent

[plaintiff's] interests" (Antonmarchi, 678 F. Supp.2d at 241), justifying his discharge for cause.

Therefore, albeit reluctantly, I must deny his motion for compensation.


## CONCLUSION

      For these reasons, the motion by Brian Fitzgerald and Anna Marie Richmond

[341] is granted to the extent of awarding Mr. Fitzgerald a lien in the amount of $46,595.30, and

Ms. Richmond a lien in the amount of $54,940.25, upon any sums payable to plaintiff in this

action, but is otherwise denied, and the motion by Anthony Pendergrass [353] is denied.

**SO ORDERED.**

DATED:      February 12, 2014

                   /s/ Jeremiah J. McCarthy
                   JEREMIAH J. MCCARTHY
                   United States Magistrate Judge