UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DR. GWENDOLYN COLE-HOOVER,                          **DECISION AND ORDER**

                                    Plaintiff,                02-CV-00826-JJM

v.

DOCCS, et al.,

                                    Defendants.
_____

      Familiarity with the facts of this case is presumed.  By Order to Show Cause ("OSC") dated March 13, 2014 [418],[1] I outlined my concerns as to the retainer agreement which the Law Offices of Prathima Reddy LLC ("Reddy") seeks to enforce by motion dated February 22, 2014 [414], and invited the parties to address the enforceability of that agreement. Reddy responded by Declaration dated March 27, 2014 [420], and plaintiff responded by submissions dated April 16, 2014 [423, 424, 425].

      Plaintiff alleges that "[t]here was never a retainer agreement signed", and claims that "we agreed on $25,000 flat fee payable at time settlement was paid.  No other discussions on any other fee agreements occurred".  Plaintiff's Response [425], ¶¶16, 6.  For purposes of this motion I need not determine whether or not the retainer agreement was executed by plaintiff, since - for the following reasons - I conclude that the agreement is unenforceable even if it was executed.  Therefore, Reddy's motion [414] is denied.

_____

    [1]    Bracketed references are to CM/ECF docket entries.

## ANALYSIS

**A.      Can the Retainer Provision be Interpreted as a Minimum Fee Agreement?**

As detailed in the OSC, the retainer agreement provides for a "non-refundable retainer amount of $50,000" ([414-2], §2), which is prohibited by Rule 1.5(d)(4) of the New York Rules of Professional Conduct (22 N.Y.C.R.R. §1200.0) ("A lawyer shall not enter into an arrangement for . . . a nonrefundable retainer fee").  However, while prohibiting a nonrefundable retainer agreement, Rule 1.5(d)(4) allows "a lawyer [to] enter into a retainer agreement . . . containing a reasonable minimum fee clause".

"'Non-refundable fee' agreements, by definition, allow an attorney to keep an advance payment irrespective of whether the services contemplated are rendered.  By contrast, a 'minimum fee' agreement is a forecast by the attorney of the minimum amount that a client can expect to pay in order for the attorney to represent the client to completion in the contemplated matter.  If the attorney is discharged prior to completion, but after entering into a 'minimum fee' agreement, he or she is entitled to payment in quantum meruit."  Matter of Cooperman, 187 A.D.2d 56, 57 ( 2d Dept. 1993), aff'd, 83 N.Y.2d 465 (1994).

Responding to the OSC, Reddy argues that "the upfront retainer was in fact a minimum fee.  It was not intended or agreed upon as a nonrefundable retainer agreement".  Reddy Declaration [420], ¶49.  Given the retainer agreement's express characterization of the $50,000 as a  "non-refundable retainer amount" ([414-2], §2), I question how Reddy can make that argument in good faith.  Courts may not "change the words of a written contract so as to make it express the real intention of the parties if to do so would contradict the clearly expressed language of the contract."  Rodolitz v. Neptune Paper Products, Inc., 22 N.Y.2d 383, 386 (1968).

The fact that plaintiff ultimately did not pay (and Reddy now does not seek to collect) the $50,000 retainer fee is irrelevant to my analysis since, as Reddy admits, "[t]he reasonableness of a contract, including an attorney fee agreement, is to be evaluated at the time it was made".  Reddy's Memorandum of Law [414-5], pp. 4-5; Alderman v. Pan Am World Airways, 169 F.3d 99, 103 (2d Cir.1999).

Although Reddy now contends that she and plaintiff "both agreed that Clause 2, requiring the $50,000 (fifty thousand minimum) payment was null and void" (Reddy Declaration [420], ¶27), that alleged modification to the original agreement was never reflected in writing, as required by Rule 1.5(c) of the New York Rules of Professional Conduct ("[p]romptly after a lawyer has been employed in a contingent fee matter, the lawyer shall provide the client with a writing stating the method by which the fee is to be determined").

Reddy suggests that by faxing a copy of the retainer agreement back to her office, plaintiff "provid[ed] assurance that there was a meeting of the minds".  Reddy Declaration [420], ¶61, n. 20.  However, the copy which plaintiff allegedly faxed back to Reddy (id., ¶27; [414-2]) still provided for a non-refundable retainer.  As plaintiff notes, "[t]he document does not contain any amendment . . . crossing out clause 2 with my signature or initials".  Plaintiff's Response [425], ¶27(d).  Therefore, if there was a "meeting of the minds", it included that provision.  *See* Rodolitz, 22 N.Y.2d at 387 ("we concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote").

Accordingly, I conclude that the provision for payment of $50,000 was an impermissible non-refundable retainer agreement, rather than a permissible minimum fee agreement.

**B.      Can the Retainer Agreement be Partially Enforced?**

      **1.      "Blue-Penciling"**

Invoking the doctrine of "blue penciling" (Reddy Declaration [420], p. 20), Reddy argues that "partial enforcement may be justified so long as the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing." Id., ¶57 (*quoting* BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 394 (1999)).

However, by including in the retainer agreement a clearly invalid provision for a nonrefundable $50,000 retainer (and then mischaracterizing it as a minimum fee agreement), Reddy has failed to demonstrate an "absence of overreaching" or a "good faith [attempt] to protect a legitimate business interest", as required by BDO Seidman.  Therefore, even if the "blue pencil" doctrine could in theory apply to a retainer agreement, it does not apply here.

      **2.      Severance**

In a related vein, Reddy suggests that ""Clause 2 of the retainer agreement should be severed . . . allowing the court to partially enforce the 1/3 contingency of the retainer agreement".  Reddy Declaration [420], p. 22.

"According to New York law, the severability of a contract is a question of the parties' intent, to be determined from the language employed by the parties, viewed in the light of the circumstances surrounding them at the time they contracted." In re Balfour MacLaine International, Ltd., 85 F.3d 68, 81 (2d Cir.1996); Christian v. Christian, 42 N.Y.2d 63, 73 (1977);

*see also* Reddy Declaration [420], ¶ 64 ("[i]n making such a determination, the primary factor to consider is the intent of the parties as determined by . . . the circumstances existing at the time of contracting").

Reddy's Declaration makes clear that at the time they contracted, she and plaintiff did *not* consider the provision for a $50,000 nonrefundable retainer to be severable from the remainder of the retainer agreement, and that its severability became a possibility only at a later date: "Dr. Cole-Hoover and I intended the required retainer payment be applicable only at the time we executed the Retainer Agreement.  Its relevancy expired *after settlement* and therefore, there was an expectation that it be severed from the contract".  Id., ¶70 (emphasis added).  Therefore, the retainer agreement is not severable.

Reddy argues that "forfeitures by operation of law are disfavored, particularly where a defaulting party seeks to raise illegality as a sword for personal gain rather than a shield for the public good".  Id., ¶72.  However, plaintiff did not initially raise the issue of illegality - I did.  "Courts have the authority to supervise the charging of fees for legal services . . . and, in that regard, contracts between attorney and client, as a matter of public policy, are of special interest and concern of the courts.  They are not always enforceable in the same manner as ordinary commercial contracts."  Malamut v. Doris L. Sassower, P.C., 171 A.D.2d 780, 781 (2d Dept. 1991).

An attorney seeking to enforce a retainer agreement must offer "clear proof of the integrity and fairness of the transaction, or [the] instrument . . . will be set aside, or held as invalid between the parties".  Mar Oil, S.A. v. Morrissey, 982 F.2d 830, 838 (2d Cir. 1993).

Since Reddy has failed to demonstrate the "integrity and fairness" of the retainer agreement, I refuse to enforce it.


### FURTHER PROCEEDINGS

Reddy purports to reserve "the right to move this Court for attorneys' fees in *quantum meruit*" (Reddy Declaration [420], ¶76), meaning "the fair and reasonable value of the services rendered".  Universal Acupuncture Pain Services, P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 263 (2d Cir. 2004).  If such a motion is to be made, it should be filed no later than May 16, 2014 and should:

1)      Address the apparent conflict in authority as to whether fees may be recovered under this theory.  *Compare* Matter of Cooperman, 83 N.Y.2d 465, 475 (1994) ("while the special nonrefundable retainer agreement will be unenforceable and may subject an attorney to professional discipline, quantum meruit payment for services actually rendered will still be available and appropriate") *with* Chen v. Chen Qualified Settlement Fund, 552 F.3d 218, 225 (2d Cir. 2009) ("New York courts have consistently held that an attorney who engages in misconduct by violating the Disciplinary Rules is not entitled to legal fees for any services rendered . . . . Accordingly, if the district court's conclusion that Goldman purposely requested an excessive fee was not clearly erroneous, then the court did not abuse its discretion in denying Goldman's fee application in its entirety").

2)      Describe the status of settlement negotiations at the time Reddy began to represent plaintiff.

3)      Document all time spent in connection with this litigation, supported by contemporaneous time records if they exist.

Plaintiff may respond by June 13, 2014, and oral argument will be held on June 23, 2014 at 2:00 p.m.

## CONCLUSION

For these reasons, Reddy's motion for attorneys' fees [414] is denied.  Let me add a note of caution, both to plaintiff and to Ms. Reddy: it is clear that one of you is not being truthful.  For example, Ms. Reddy states under oath that plaintiff "signed and executed the Retainer Agreement" (Reddy Declaration [414-1], ¶16), whereas plaintiff states under oath that she "did not sign a retainer agreement".  Plaintiff's Declaration [425], ¶15.  Ms. Reddy states under oath that she "spent most days, nights and weekends reviewing nearly a decade of litigation in efforts to prepare and strategize for trial" (Reddy Declaration [414-1], ¶23), and plaintiff states under oath that Ms. Reddy "instructed me to pick up my files from Mr. Pendergrass and store them in my basement, since she no longer needed to review them in preparation for trial".  Plaintiff's Declaration [425], ¶15.

At this point I do not know who is telling the truth.  However, both parties should be forewarned that I will not treat misrepresentations to this court lightly - especially if they are deliberate.

**SO ORDERED.**

DATED:        April 17, 2014

                                        /s/ Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge