UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DR. GWENDOLYN COLE-HOOVER,                                    **DECISION AND ORDER**

                                    Plaintiff,                    02-CV-00826-JJM

v.

NEW YORK DOCCS, et al.,

                                    Defendants.

_____

Pursuant to 28 U.S.C. §636(c)(1), the parties have consented to conduct all

proceedings before a Magistrate Judge [20].[1]  Familiarity with the lengthy history of this case is

presumed.

Before me is attorney Prathima Reddy's Renewed Notice of Motion for an award

of attorney's fees [452].  Oral argument was held on April 16, 2015 [458], followed by post-

argument supplemental submissions [460, 461].  For the following reasons, the motion is granted

in part and denied in part.  In addition, plaintiff shall pay mediator Krista Gottlieb the sum of

$4,226.25 for mediation services rendered in connection with this court's Alternative Dispute

Resolution ("ADR") program.


**BACKGROUND**

Ms. Reddy initially moved for an award of attorney's fees on February 22, 2014

[414].  In a Decision and Order dated April 17, 2014 [426], I denied that motion, holding that the

retainer agreement upon which she sought to enforce was invalid.  On May 16, 2014, Ms. Reddy

filed an amended motion for attorney's fees, seeking to recover in *quantum meruit*  [431].  By

_____

[1]        Bracketed references are to CM/ECF docket entries.

Decision and Order dated December 30, 2014 [447], I concluded "that the unenforceability of the retainer agreement does not automatically bar Reddy from recovering in *quantum meruit* for the reasonable value of her services", but that "a proper determination of Reddy's request . . . must await the outcome of the underlying litigation". Id., pp. 3, 4.

On March 5, 2015, the United States Court of Appeals for the Second Circuit issued its mandate [448] affirming this court's judgment [394] resolving the underlying action. Thereafter Ms. Reddy renewed her motion, arguing that "the fair and reasonable value of the services provided . . . in this case is $173,100.00". Reddy's Memorandum of Law [452-1] p. 2. In addition, she "seeks payment of her fees in preparing and litigating this motion in the amount $27,553.00". Id.

## ANALYSIS

### A.        Recovery in *Quantum Meruit*

"In determining quantum meruit, [the] Court has broad discretion in determining what constitutes reasonable compensation for legal services." Newkirk v. Fourmen Construction., Inc., 2006 WL 1029709, *2 (N.Y.Sup. 2006). "The factors used in determining the fair and reasonable value of an attorney's services under *quantum meruit* include: the nature of the litigation; the difficulty of the case and the amount at stake; the time, the effort and skill required; the counsel's experience, ability, reputation and role in the case; the results achieved; the fee customarily charged in the locality; the contingency or certainty of compensation; and the terms of the contingency agreement." Tops Markets, Inc. v. Quality Markets, Inc., 2001 WL 392082, *2 (W.D.N.Y. 2001) (Elfvin, J.).

Consideration of these various factors warrants a substantial fee award, albeit not in the full amount requested.  As of late September 2012, when plaintiff retained Ms. Reddy, the action had been pending for ten years and the trial - scheduled to last a month - was just a few weeks away.  Although plaintiff maintains that she retained Ms. Reddy only to settle the case, not to try it (plaintiff's Response [425], ¶¶6, 8), that assertion is contradicted by Ms. Reddy's September 27, 2012 e-mail to plaintiff, stating that "I plan to ask for an extension in order to prepare for trial. In the event that an extension is not granted, we will have to aggressively prepare for the upcoming trial date. I will make your case a priority in terms of my available time . . . . Trial preparation is a lengthy and time-consuming process but I am committed to your case." [461-1], p. 7 of 11.

Plaintiff further claims that Ms. Reddy "was aware that there was little chance, that my case, would not settle in my favor.  Once I told Mrs. Reddy I was going to settle my case, she knew the case would be settled for a significant amount of money".  Plaintiff's Response [425], ¶18.  Plaintiff's attorney suggests that "[t]o effectively initiate settlement discussions, she could have simply reviewed the Complaint and perhaps Plaintiff's deposition and expert report, picked up the phone, and taken advantage of the change in counsel to settle the case".  Plaintiff's Memorandum of Law [440], p. 3.

For several reasons, I find that argument unpersuasive. In the first place, plaintiff admits that "settlement discussions had broken off by the time [Ms. Reddy] was retained".  Plaintiff's Memorandum of Law [434], p. 4.  Secondly, Ms. Reddy could hardly have "taken advantage of the change in counsel to settle the case" - if anything, defendants' knowledge that

she was new to the case, with only a month to get up to speed, placed her at a significant

*dis*advantage in settlement negotiations.

Therefore, it is hardly surprising that Ms. Reddy had to devote substantial time to familiarize herself with the details of this case, which was by no means easy.  Even if the ultimate goal was to settle, the only way to reach that goal was by preparing to try the case if necessary - for if defendants believed that she was not up to the task, it is highly unlikely that they would have agreed to the $750,000 settlement placed on the record on November 5, 2012 [337, 402].

Plaintiff argues that "Reddy provided no benefit to Plaintiff after November 5, 2012.  The case was settled in open court on that date . . . . This is obvious from the fact that this Court entered Judgment on November 13, 2013 memorializing the terms of the settlement." Plaintiff's Memorandum of Law [453], pp. 4-5.  However, this argument ignores the fact that defendants did not immediately agree to pay the stipulated amount - instead, they insisted on additional terms which had not been part of the agreed settlement, which Ms. Reddy had to oppose.  As with virtually every other aspect of this case, that process was highly contentious.

In fact, plaintiff's current attorney himself experienced that contentiousness: although he told this court that he "was able to settle the matter after expending just 5.4 hours on the appeal" of the judgment [394] (plaintiff's Memorandum of Law [440], p. 3), in fact the appeal was never settled: it was briefed and argued (by defendants only), and ultimately decided by the Second Circuit [448].

Plaintiff challenges several of Ms. Reddy's time entries as either excessive or insufficiently documented.  While I do question a some of those entries, I note that "[a]lthough

the time actually spent by the attorney on the case is a material factor in determining his or her compensation on a quantum meruit basis, it is not absolutely controlling over other factors which help to determine the value of the attorney's services." 7 N.Y. Jur.2d, Attorneys at Law §240. This was a hard fought case in which Ms. Reddy achieved a significant benefit for plaintiff, under very challenging time constraints, and I have little doubt that most of the time which she claims to have devoted to this case was both legitimate and necessary.

In determining what constitutes a reasonable fee award, "trial courts need not, and indeed should not, become green-eyeshade accountants . . . . [They] may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, ___U.S.___, 131 S.Ct. 2205, 2216 (2011). In "cases with voluminous fee applications, courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application." New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir.1983). "These courts have endorsed percentage cuts as a practical means of trimming fat from a fee application." Id.

Therefore, as I did with the fee requests of plaintiff's former attorneys Brian Fitzgerald and Anna Marie Richmond, I find that any concerns with Ms. Reddy's application are adequately addressed by a 10% reduction. *See* February 12, 2014 Decision and Order [413], pp. 7-8, and cases cited therein. Accordingly, Ms. Reddy's requested *quantum meruit* award of $173,100.00 will be reduced by 10% to $155,790.00.

**B.      Recovery for Fees Incurred in Preparation of this Motion**

In addition to *quantum meruit* recovery, Ms. Reddy argues that "fees may be awarded for time spent on the fee application".  Reddy's Memorandum of Law [452-1], p. 6 (*citing* Porzig v. Dresdner, Kleinwort, Benson, North America LLC, 497 F.3d 133, 142 (2d Cir. 2007) and Gagne v. Maher, 594 F.2d 336, 344 (2d Cir.1979), aff'd, 448 U.S. 122 (1980)).  However, both Porzig and Gagne involved "statutory fee authorizations".  497 F.3d at 142, 594 F.2d at 344.  *See also* Mid-Hudson Legal Services v. G & U, Inc., 465 F. Supp. 261, 270 (S.D.N.Y. 1978) ("courts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for time spent on the fee application").

Although plaintiff had asserted statutory claims against defendants, those claims have now been settled. Ms. Reddy's claim for attorney's fees from plaintiff is a state law claim. "In New York, an award of fees on fees must be based on a statute or on an agreement".  546-552 West 146th Street LLC v. Arfa, 99 A.D.3d 117, 120 (1st Dept. 2012).  *See also* Hempstead General Hosp. v. Allstate Insurance Co., 106 A.D.2d 429, 429 (2 Dept.1984), aff'd, 64 N.Y. 2d 958 (1985) (reversing an award to plaintiff "for time spent in substantiating its counsel fees", holding that "[c]ounsel fees are not recoverable absent express statutory or contractual provision therefor").  Ms. Reddy points to neither a statutory nor a contractual basis for recovering these fees.

She next argues that this court "has inherent power to impose fees for bad-faith conduct" (Supplemental Letter Brief [461], pp. 2-3, *citing* Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991)), and that "in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of

justice so require". Id., p. 3, *quoting* Hall v. Cole, 412 U.S. 1, 4-5 (1973).  However, the "court

must . . . exercise caution in invoking its inherent power" (Chambers, 501 U.S. at 50), and should

"grant attorneys' fees sparingly under that power". RTR Technologies, Inc. v. Helming, 707 F.3d

84, 94 (1st  Cir. 2013).

   Moreover, since this determination calls for "the exercise of [the court's]

equitable powers" (Hall, 412 U.S. at 5), "[t]he guiding doctrine . . . is the equitable maxim that

he who comes into equity must come with clean hands."  Precision Instrument Mfg. Co. v.

Automotive Maintenance Machinery Co., 324 U.S. 806, 814 (1945).  "Thus while equity does

not demand that its suitors shall have led blameless lives . . . it does require that they shall have

acted fairly . . . as to the controversy in issue." Id. at 814-15.  Although perhaps not intentionally,

Ms. Reddy did not act fairly in structuring her fee arrangement with plaintiff.  *See* my Decision

and Order dated April 17, 2014 [426].

   For all of these reasons, I conclude that Ms. Reddy is not entitled to compensation

for the time which she and her attorneys spent in seeking to recover her attorney's fees.


**C.**  **Payment of Mediator's Fees**

   Pursuant to this court's ADR program, the parties participated in a mediation with

attorney Krista Gottlieb.  Section 3.3 of this court's ADR Plan (available on the court's public

website) provides that the mediator's "fees shall be shared equally by all separately represented

parties, unless otherwise agreed by the parties or ordered by the Court".  While defendants have

paid their share of Ms. Gottlieb's fees, despite repeated reminders plaintiff has not yet paid her

share ($4,226.25).

During proceedings on March 11, 2015 [451] I reminded Mr. Boyadjis of this outstanding obligation, and he replied "I don't see any reason why that should not be taken care of".[2]  By Text Order dated April 16, 2016 [459], I gave plaintiff until April 29, 2015 to "make a written submission addressing whether she is responsible for the outstanding mediation fees ($4,226.25) owed to the mediator, Krista Gottlieb, after which time I will take that issue under advisement".  I further stated that "[i]f I conclude that plaintiff is responsible for the outstanding mediation fees, the escrowed portion of the Judgment may be applied to satisfy those fees".  Id.

Since plaintiff has not responded to that inquiry, and in view of her attorney's statement on March 11, 2015, payment of the mediator's fees should be deducted from the portion of the judgment which was to be held in escrow.


## CONCLUSION

For these reasons, the judgment entered in favor of plaintiff on November 13, 2013 [394] shall be paid (either directly or from escrow) as follows:

- in accordance with my February 12, 2014 Decision and Order [413], the sum of $46,595.30 shall be paid to attorney Brian Fitzgerald and the sum of $54,940.25 shall be paid to attorney Anna Marie Richmond;

- in accordance with today's Decision and Order, the sum of $155,790.00 shall be paid to attorney Prathima Reddy and the sum of $4,226.25 shall be paid to attorney Krista Gottlieb; and

---

[2]        Chambers transcription form the digital recording.

- the balance of the judgment (with accrued interest) shall be paid to plaintiff, care of her attorney Anthony Boyadjis, in accordance with her instructions [454].[3]

Dated: May 21, 2015


/s/ Jeremiah J. McCarthy
Jeremiah J. McCarthy
United states Magistrate Judge

---

[3]     Although not directly relevant to my decision, it bears noting that the total attorney's fees awarded ($257,325.55) is only slightly in excess of what plaintiff would have paid under a standard one-third contingency arrangement.